IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JULIO E. LEANDRY HERNÁNDEZ**,

    Plaintiff,

    v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

Civil No. 12-1561 (BJM)

**OPINION AND ORDER**

Julio Leandry-Hernández seeks review of the Commissioner's decision finding that he is not entitled to disability benefits under the Social Security Act (the "Act"). Leandry asks for the decision to be reversed and for an order either awarding disability benefits or remanding the case for further proceedings. The parties consented to proceed before a magistrate judge. Docket No. 6. Leandry filed a memorandum of law in support of his position. Docket No. 23. The Commissioner opposed. Docket No. 26. After careful review, the Commissioner's decision is **VACATED** and **REMANDED** for proceedings consistent with this opinion.

**STANDARD OF REVIEW**

The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported

by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987). Written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the Commissioner to consider in conjunction with the examining physician's reports. *Irizarry-Sánchez v. Comm'r*, 253 F. Supp. 2d 216, 219 (D.P.R. 2003).

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to an impairment already determined to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the

listed impairments, she is conclusively presumed to be disabled.  At step four, the Commissioner determines whether the impairment prevents the claimant from performing the work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. § 404.1520(e).  If she cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of her residual functional capacity ("RFC"), as well as age, education, and work experience.  If the claimant cannot, then she is entitled to disability benefits.  20 C.F.R. § 404.1520(f).

The burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act.  *See Bowen*, 482 U.S. at 146–47 n.5.  At steps one through four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability.  *Santiago v. Sec'y of Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991).  Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform.  *Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).

Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of her insured status, or her date last insured.  *Cruz Rivera v. Sec'y of Health & Human Servs.*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

Leandry was born on May 13, 1967.  Transcript ("Tr.") 232.  He never completed schooling above the third grade (Tr. 42), and worked as a laborer and then as a construction worker between 1996 and 2008 (Tr. 64).  Leandry claims a disability onset date of June 11, 2008, due to major depressive disorder and bronchial asthma.  Tr. 60.  He was insured through September 30, 2013.  Tr. 241.  A prior Social Security Disability Insurance Benefits application filed in August 2008 was denied by an Administrative Law

Judge on January 26, 2010. That application is currently pending before the Appeals Council. Tr. 15.

The Disability Insurance Benefits application at issue here was filed in February 2010. This application was denied in September 2010 when he was deemed not disabled. Tr. 54. On January 26, 2011, Leandry's reconsideration request was also denied, citing that the previous determination was in accordance to the law. Tr. 58. Leandry requested a hearing and one was held on July 15, 2011 before Administrative Law Judge ("ALJ") Harold Granville. Tr. 30–51. Leandry and Dr. Ariel Cintrón-Antommarchi, a vocational expert ("VE"), testified at the hearing. *Id.* Based on the ALJ's hypothetical questions, the VE stated that a person with Leandry's physical and mental limitations is capable of working as a wire preparation machine tender, an electrical accessory assembler, or a small product assembler. Tr. 48–49.

On July 21, 2011, the ALJ reviewed the evidence *de novo* and concluded that Leandry was not under a disability, as defined in the Social Security Act, at any time from June 11, 2008 through the date of his decision. Tr. 9–29. Specifically, the ALJ found Leandry's conditions did not meet or equal the level of any listed impairments already determined to preclude substantial gainful activity. Tr. 18–19. The ALJ also found that based on Leandry's residual functional capacity, he is unable to perform any of his past relevant jobs, but that he is capable of performing light, unskilled jobs which exist in significant numbers in the national economy. Tr. 23–25. On May 22, 2012, the Appeals Council denied Leandry's request for review. Tr. 1–6.

***Leandry's Mental Illness Medical History***

Dr. Manuel Brignoni was Leandry's treating psychiatrist starting August 2009. Tr. 325–60. Dr. Brignoni's initial evaluation indicated that Leandry was sad and had decreased appetite. Tr. 107–08. He also noted that Leandry was cooperative, alert, logical, coherent, and had adequate concentration and a normal sleep pattern. *Id.* Subsequent visits in September 2009 revealed similar conditions. Tr. 111, 115. In

January 2010, Dr. Brignoni discharged Leandry for failing to appear for treatment for more than three months. Tr. 113. Leandry returned to see Dr. Brignoni in April 2010, and in May 2010, Leandry's condition appeared to worsen. Progress notes indicate Leandry was now feeling depressed and anxious, with repetitive thoughts and thoughts of flight. Tr. 119. In addition, his attention and concentration was diminished. *Id.* In the latter half of 2010, Leandry's condition stabilized and he returned to conditions similar to his initial evaluation, with the exception of his concentration, which was now diminished. Tr. 121–28.

Dr. Brignoni's July 2010 psychiatric evaluation reported Leandry suffered from moderate major depressive disorder (296.32). Tr. 132–35. Brignoni stated that Leandry arrived to the clinic alone using private transportation. He stated that Leandry feels down and anxious, and can only sleep with the help of medications. According to the report, Leandry's "attention and concentration are poor," and he has "difficulty interacting at a social level." Tr. 134. He concluded that Leandry's Global Assessment Functioning ("GAF") score[1] was 53. Tr. 135.

In September 2010, at the request of the Social Security Administration ("SSA"), Luis Umpierre, Psy. D., completed a consultative review of Leandry's mental health condition. Dr. Umpierre reviewed the available medical evidence and concluded that Leandry suffers from major depression and his condition is "sufficiently severe" as to impair his capacity for complex and detailed tasks, but he still retains the capacity to complete "simple tasks." Tr. 396. Dr. Umpierre also concluded that Leandry experiences moderate restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or

---

[1] GAF is a scale from 0 to 100 used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults. A GAF score between 51 and 60 indicates "moderate symptoms" or "moderate difficulty in social occupational, or school functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (DSM–IV–TR).

pace; and has had no episodes of decompensation. Tr. 407. In assessing Leandry's residual functional capacity, Dr. Umpierre determined that Leandry was moderately limited in many cognitive abilities. Specifically, the report noted that Leandry was moderately limited in his ability to remember locations and work-like procedures; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual; and to complete a normal workday and workweek without psychological problems interfering. Tr. 411–12. The assessment noted no significant limits in his ability to understand, remember, and carry out very short and simple instructions; to sustain an ordinary routine; or to make simple work-related decisions. *Id.* Dr. Umpierre concluded that Leandry can perform "simple, routine, repetitive work in a stable environment" and would not require special supervision. Tr. 413. In January 2011, at the SSA's request, Jeanette Maldonado, Psy. D., re-assessed Leandry's mental health condition based on the most recent medical records submitted by Dr. Brignoni. Dr. Maldonado noted no significant changes in condition, and affirmed Dr. Umpierre's findings from September 2010. Tr. 420.

In February 2011, Leandry completed a depression-screening test at Med Centro. Tr. 136, 428. The report indicated Leandry feels down about the future and experienced a change in appetite, but noted no other symptoms of depression. Tr. 136.

On July 12, 2011, Dr. Brignoni completed another psychiatric evaluation for Leandry. Tr. 451–60. Brignoni reported the patient came to the appointment alone, was dressed appropriately, and his thoughts were logical and relevant. Tr. 453. In an immediate memory test, Leandry remembered four of five unrelated words. *Id.* After five minutes, he remembered three of the five words. Tr. 454. Brignoni's notes on Leandry's attention and task persistence are illegible. *Id.* Overall, Brignoni concluded

Leandry now had a GAF score of 40.[2]  Tr. 456.  In the mental RFC assessment, Brignoni noted Leandry was markedly limited in most categories of functioning (e.g. ability to carry out very short and simple instructions, to make simple work-related decisions, to interact appropriately with the general public, and to be aware of normal hazards and take appropriate precautions).  Tr. 457–58.  The doctor indicated moderate limitations in Leandry's ability to remember locations and work-like procedures; to understand and remember very short and simple instructions; to ask simple questions or request assistance; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to travel in unfamiliar places or use public transportation.  *Id.*

**Leandry's Physical Impairment Medical History**

Leandry also underwent treatment at Policlínicas de Ponce from October 2008 through February 2010 for "B.A." (bronchial asthma).  Tr. 313–19, 365.  He visited the clinic on average once a month.  Starting in October 2010 through May 2011, Leandry received treatment at Med Centro for bronchial asthma and chronic obstructive pulmonary disease ("COPD").  Tr. 424–50.  Progress notes from Med Centro indicate his respiratory condition was stable.  Tr. 424–35.

In June 2010, Leandry underwent an internist pulmonary evaluation with Dr. Fernando Torres-Santiago.  Tr. 366–79.  The examination revealed mild restrictive ventilator defect by PFT, mild perihilar peribronchial thickening, bronchial asthma, and anxiety/depression issues.  Tr. 369.  Torres concluded Leandry should avoid exposure to fumes or environmental irritants, and he is "unable to do regular work."  *Id.*

In August 2010, the SSA obtained a consultation from Dr. Pedro Nieves.  Dr. Nieves reviewed the results from Dr. Torres's medical examination and concluded that Leandry had no physical impairments other than his respiratory condition, which required

---

[2] The GAF score range between 41 and 50 is described as "[s]erious symptoms . . . OR any serious impairment in a social, occupational, or school functioning . . . ."  DSM–IV–TR at 34.

him to avoid fumes, wetness, and humidity. Tr. 386–94. In January 2011, again at the SSA's request, Dr. Rafael Queipo re-considered Leandry's physical condition based on the latest medical records submitted. Dr. Queipo affirmed Dr. Nieves's findings from August 2010 in full. Tr. 423.

## DISCUSSION

Leandry claims that the ALJ erred on two issues.[3] First, he argues that the ALJ erred in finding that his mental impairment did not meet the criteria of listing 12.04. Docket No. 23 at 6–7. Second, he summarily claims that the ALJ failed to afford sufficient weight to the medical opinions of the treating psychiatrist and physician in determining his residual functional capacity assessment. *Id.* at 8. Although Leandry does not proceed to explain how the ALJ failed to accord weight to treating physicians' opinions, I note that the ALJ in his opinion failed to reconcile his decision with Dr. Brignoni's most recent psychiatric assessment from July 2011. Thus, I will discuss plaintiff's two arguments in turn.

I.     **Determination that Mental Impairment Did Not Meet Listing Criteria**

Under step three of the sequential evaluation process, a finding that the claimant suffers from one of the listed impairments in the social security regulations results in an automatic finding of disability. *See* 20 C.F.R. § 416.920(d). The burden is on the claimant, however, to produce evidence that he satisfies the criteria for a particular "listed" condition. *Mills v. Apfel*, 244 F.3d 1, 6 (1st Cir. 2001). Under the regulations, the Commissioner has final responsibility for determining whether the claimant has a listed impairment, but must consider opinions from medical sources. 20 C.F.R. §

---

[3] Leandry's brief is repetitive, unstructured, and generally lacks thorough legal discussion of the issues. It appears to advance a third position, which does not merit extensive discussion. Leandry briefly contends that the ALJ should have found Leandry capable of less than sedentary work. Docket No. 23 at 9. But he gives no detail as to why the record supports such a finding; thus, the argument is deemed waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

404.1527(d)(2).  The Commissioner and his delegates also consider non-treating source opinions on whether a claimant's condition equals a listed impairment. § 404.1527(e)(2)(iii).  Such medical expert opinions are weighed using the same criteria as other medical opinions.  *Id.*

Here, the ALJ considered medical opinions from both treating and non-treating sources and found Leandry's mental condition did not meet the requirements of the Impairments Listing in Appendix 1 to Subpart P of the regulations.  Specifically, the ALJ noted plaintiff's mental impairment does not meet the criteria of listing section 12.04.  Tr. 18.  To satisfy the requirements of 12.04, the plaintiff must demonstrate at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, Subpt. P, App. 1.  The ALJ found Leandry only exhibited moderate restrictions and difficulties in the first three categories, and experienced no episodes of decompensation.  Tr. 18–19.  It is undisputed that Leandry has experienced no episodes of decompensation.

As to activities of daily living, Leandry's function report states he has no problems with personal care (Tr. 74), but due to his depression he does not want to take care of his appearance, and his sister is responsible for administering his medications because he forgets whether he has taken them or not (Tr. 75).  He also reported that he does not cook, do any housework, or go out by himself, and he no longer handles his own finances.  Tr. 75–76.  Dr. Brignoni's psychiatric evaluation from July 2010 supports Leandry's assertions (Tr. 134), except that the evaluation notes Leandry supervises and administers his own medications (Tr. 133), and can manage his own funds (Tr. 135). Based on Dr. Brignoni's notes, Dr. Umpierre in September 2010 concluded that Leandry's condition constitutes a moderate restriction on activities of daily living.  Tr. 407.  Dr. Brignoni's July 2011 psychiatric evaluation indicated no changes in Leandry's

ability to engage in daily personal care.  Tr. 455.  There is no evidence to contradict Dr. Umpierre's earlier assessment, and thus the ALJ's finding on this first functional category is supported by substantial evidence.

In the social functioning realm, the ALJ found Leandry suffered from moderate difficulties.  The ALJ's conclusion was based on his own observations of the plaintiff during the hearing and the evidence before him.  Tr. 18.  Brignoni's two evaluation reports state in a conclusory manner that Leandry has difficulty interacting in social activities or in groups.  Tr. 134, 455.  Leandry has also repeatedly stated that he does not like to go out and prefers to be alone.  Tr. 39, 78.  But he lives with his children, and his sister often comes by to help with household chores and errands.  Tr. 37.  Moreover, Dr. Torres-Santiago reported that Leandry appeared to the appointment in June 2010 with a friend, Jose Moreno (Tr. 366), and he was cooperative (Tr. 368).  Dr. Brignoni's progress notes also indicate that Leandry was cooperative throughout.  Tr. 108, 111, 115, 117, 119, 121, 123, 125, 134.  Plaintiff also reported that he gets along "well" with authority figures and has never been fired because of problems getting along with others.  Tr. 79.  Dr. Umpierre's consultation concluded Leandry had moderate difficulties in social functioning.  Tr. 407.  On the whole, the record shows that plaintiff does not socialize much, but he does maintain a few relationships, and was consistently cooperative during his doctors' visits and the ALJ hearing.  Although the evidence presents a close question, it cannot be said that the ALJ's finding of moderate difficulties in social functioning is unsupported by substantial evidence.

The ALJ also found moderate difficulties in maintaining concentration, persistence, or pace.  The determination is partly based on Leandry's behavior during the hearing.  The ALJ noted Leandry was able to give details of his work history and medical conditions, and to describe his former responsibilities in prior jobs.  Tr. 18–19.  As for the medical record, Brignoni's progress notes indicate Leandry's attention and concentration were adequate in August 2009 (Tr. 326), but diminished in September 2009 (Tr. 329),

February 2010 (Tr. 333), April 2010 (Tr. 335), May 2010 (Tr. 337), August 2010 (Tr. 339), and October 2010 (Tr. 343). His attention and concentration returned to adequate in November 2010. Tr. 345. In a July 2010 evaluation report, Dr. Brignoni stated that the patient's attention and concentration were poor. Tr. 134. In September 2010, Dr. Umpierre credited Dr. Brignoni's reports of poor attention and concentration (Tr. 409), and concluded that Leandry has only moderate difficulties in maintaining concentration, persistence, or pace (Tr. 407). Brignoni's July 2011 notes on Leandry's attention span and task persistence are illegible. Tr. 454. But in an immediate memory test, Leandry remembered four of five unrelated words (Tr. 453), and after five minutes he remembered three of the words (Tr. 454). Brignoni in the RFC assessment noted the patient is markedly limited in his abilities to maintain concentration (Tr. 457–58), but failed to elaborate and provide details (Tr. 459). The evidence shows that Leandry indeed has difficulties in maintaining concentration, persistence, or pace; but the ALJ's determination that Leandry suffers only moderate difficulties is supported by Dr. Brignoni's detailed notes, and Dr. Umpierre's expert opinion. In sum, I find the ALJ's step three determination supported by substantial evidence.

## II.   Treating Physicians Opinions

Leandry next contends that the ALJ should have given more weight to Dr. Brignoni's findings and to the findings of doctors at Policlínicas de Ponce and Med Centro.[4] Docket No. 23 at 8.

The Commissioner's regulations require the ALJ to give the opinions of treating physicians "on the nature and severity" of a plaintiff's impairments "controlling weight," at least where the opinions are "well-supported by medically acceptable clinical and

---

[4] Leandry failed to point out which findings from the doctors at Policlínicas de Ponce and Med Centro the ALJ failed to appropriately consider. The court notes that the ALJ in his decision discussed and considered the progress notes from both clinics. Tr. 20–21. Plaintiffs' contention that the ALJ should have given more weight to these clinics' findings thus appears to be meritless and is deemed waived. *Zannino*, 895 F.2d at 17.

laboratory diagnostic techniques" and are "not inconsistent with other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2). *But see* 20 C.F.R. § 404.1527(d)(2) (noting that "final responsibility for deciding" various issues, including an impairment's nature and severity, "is reserved to the Commissioner"). The ALJ may reject a treating physician's opinion when it is not supported by clinical evidence or is inconsistent with other evidence in the record. *Arias v. Comm'r of Soc. Sec*, 70 F. App'x 595, 598 (1st Cir. 2003). The ALJ must "always give good reasons" for the weight it gives a treating source opinion. 20 C.F.R. § 404.1527(c)(2); *see also Polanco-Quiñones v. Astrue*, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam). Failure to state the reasons for rejecting a treating physician's opinion constitutes grounds for remand. *Martinez v. Comm'r of Soc. Sec.*, 306 F. Supp. 2d 98, 99 (D.P.R. 2004); *see also Soto v. Sec'y of Health & Human Servs.*, 795 F.2d 219, 221 (1st Cir. 1986) (remanding decision where the ALJ "never indicated awareness" of treating physicians' specific IQ level findings).

Here, the ALJ accorded "significant weight" to Dr. Brignoni's findings from his progress notes and his July 2010 evaluation (Tr. 22), but failed to address Dr. Brignoni's more recent July 2011 report, in which he concluded Leandry had deteriorated to a GAF score of 40, and was markedly limited in most functional categories (Tr. 456–58). Moreover, Brignoni's opinion appears to be contrary to the ALJ's RFC finding that Leandry could perform unskilled tasks.[5] Tr. 19. Thus, the ALJ perhaps did not give this opinion significant weight. If the ALJ considered and discounted Dr. Brignoni's opinion as to Leandry's ability to concentrate, however, he provided no explanation for the weight, or lack thereof, that he assigned to it. Without a clear explanation of the ALJ's treatment of Dr. Brignoni's most recent opinion, the court cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence.

---

[5] For example, the July 2011 mental RFC assessment indicates that the patient was markedly limited in his ability to carry out very short and simple instructions, to work in coordination with others without being distracted, or to make simple work-related decisions. Tr. 457.

*See Martinez*, 306 F. Supp. 2d at 99; *Andrews v. Heckler*, 573 F. Supp. 1089, 1092 (E.D. Pa. 1983) (remanding case for failure to explicitly weigh treating physician's report especially when it "provides the most recent medical evaluation of claimant's condition").

It also cannot be said that Brignoni's last report is clearly inconsistent with the rest of the evidence in the record—because it is the most recent report. It is possible that Leandry's depression worsened, in which case Dr. Brignoni's July 2011 assessment would be completely consistent with the prior objective evidence and medical findings by Drs. Brignoni and Umpierre.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED**, and the matter is **REMANDED** for further consideration of whether Julio Leandry-Hernández was disabled on or after June 11, 2008. Upon remand, the ALJ is free to consider any additional evidence he deems necessary to aid his task of determining whether the plaintiff is disabled. This ruling should not be considered by the parties as an opinion on the ultimate merits of plaintiff's disability claim upon remand.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of October, 2013.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge